IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
STARPOINT, INC. d/b/a          )
STARPOINT GLOBAL SERVICES,     )
                               )
        Plaintiff,             )
                               )
   v.                          )    1:21CV720
                               )
UNIVERSITY OF SOUTH ALABAMA    )
d/b/a UNIVERSITY OF SOUTH      )
ALABAMA MEDICAL CENTER         )
a/k/a USA HEALTH and           )
UNIVERSITY OF SOUTH ALABAMA    )
CHILDREN'S AND WOMEN'S         )
HOSPITAL,                      )
                               )
        Defendants.            )
```

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Before this court is a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), (Doc. 8), filed by Defendants The University of South Alabama d/b/a University of South Alabama Medical Center a/k/a USA Health University Hospital ("USA-MC") and The University of South Alabama, Children's and Women's Hospital, a/k/a USA Health Children's and Women's Hospital ("USA-CWH"). Plaintiff Starpoint, Inc. d/b/a Starpoint Global Services opposes Defendants' motion, and in the alternative and in lieu of dismissal, asks this court to transfer this case to the Southern District of Alabama.

(Doc. 16.) For the following reasons, this court will grant Defendants' motion.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is a North Carolina corporation that provides "information management services . . . to companies and health care providers in South Carolina, Texas, Tennessee, North Carolina, and Alabama." (Compl. (Doc. 1) ¶ 2.)[1] USA-MC "is an academic medical center associated with the University of South Alabama College of Medicine," and USA-CWH "is a hospital located in Mobile, Alabama that is devoted exclusively to the care of children and women." (Id. ¶¶ 5, 7.) USA-MC and USA-CWH are "subdivision[s] of" University of South Alabama. (Id.)[2]

In September 2007, the parties entered into an Estimated Cost and Service Proposal for storage and management of USA-CWH's radiology records. (Id. ¶ 13.) In September 2008, the

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

[2] Despite Plaintiff's response brief repeatedly referring to Defendants in the singular, (see, e.g., Mem. of Law in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Resp.") (Doc. 16) at 2), this court assumes without deciding there are two Defendants, USA-MC and USA-CWH. Plaintiff's Complaint recognizes they are two separate entities, (see Compl. (Doc. 1) ¶¶ 4-6; see also Pl.'s Resp. (Doc. 16) at 1 (referring to USA-MC and USA-CWH "collectively, as 'Defendants'")), as do Defendants, (see Docs. 10, 11). Accordingly, this court and uses the plural herein.

parties entered into a similar proposal for USA-MC's records. (Id. ¶ 15.) In connection with those proposals, the parties entered into a Storage Agreement under which Defendants agreed to pay Plaintiff for its storage and information management services. (Id. ¶ 18.) The Storage Agreement required Plaintiff to perform the following work:

> intake and inventory of the x-rays and related radiology records of Defendant, inspection and destruction of x-rays and related radiology records identified and requested by Defendant with service dates of five (5) years or greater, management, storage, digital conversion, and indexing of x-rays and related radiology records of Defendant, and physical delivery of x-rays and related radiology records requested by Defendant.

(Id. ¶ 19.) The Storage Agreement was for a one-year term, subject to automatic renewals for successive one-year terms, unless a party provided at least thirty days written notice before the expiration of the existing term. (Id. ¶ 20.) The parties agreed to defer payment related to the destruction of the x-rays and other records until the end of their relationship. (Id. ¶ 24.)

Plaintiff alleges Defendants "ha[ve] failed to pay the agreed-upon fees and costs associated with the retrieval and destruction of the x-rays and related radiology records that are eligible for destruction," so "Plaintiff has been forced to

-3-

continue to store all of the x-rays and related radiology records." (Id. ¶¶ 26, 44-45.)

On December 18, 2020, Plaintiff terminated its contracts with Defendants due to Defendants' alleged default. (Id. ¶¶ 47-48.) Defendants have refused to pay Plaintiff for services performed under the contracts. (Id. ¶ 51.)

On September 16, 2021, Plaintiff filed a Complaint alleging claims for breach of contract, account stated, and unjust enrichment. (Id. ¶¶ 54-87.) Defendants moved to dismiss, (Doc. 8), and filed a brief in support, (Br. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Br.") (Doc. 9)). Plaintiff responded, (Pl.'s Resp. (Doc. 16)), and Defendants replied, (Reply in Further Supp. of Defs.' Mot. to Dismiss (Doc. 17)). This matter is ripe for adjudication.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). In the context of such a motion, courts should "regard the pleadings as mere evidence on the issue," and "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."

-4-

Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999) (internal quotation marks omitted) (quoting Richmond, 945 F.2d at 768). As a general rule, the plaintiff bears the burden of proving that subject matter jurisdiction exists. Richmond, 945 F.2d at 768.

The Fourth Circuit has recently clarified that the defense of sovereign immunity is a jurisdictional bar, explaining that "sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction." Cunningham v. Gen. Dynamics Info. Tech., Inc., 888 F.3d 640, 649 (4th Cir. 2018) (internal quotation marks omitted) (citing Ackerson v. Bean Dredging LLC, 589 F3d 196, 207 (5th Cir. 2009)) (discussing sovereign immunity in the context of government contractors); see also Cunningham v. Lester, 990 F.3d 361,365 (4th Cir. 2021) (recognizing sovereign immunity as a jurisdictional limitation and describing it as "a weighty principle, foundational to our constitutional system"). In this context, however, "the burden of proof falls to an entity seeking immunity as an arm of the state, even though a plaintiff generally bears the burden to prove subject matter jurisdiction." Williams v. Big Picture Loans, LLC, 929 F.3d 170,

176 (4th Cir. 2019) (citing Hutto v. S.C. Ret. Sys., 773 F.3d 536, 543 (4th Cir. 2014)).

III. **ANALYSIS**

Defendants argue that Plaintiff's claims should be dismissed under Rule 12(b)(1) because they are barred by the Eleventh Amendment. (Defs.' Br. (Doc. 9) at 3.)

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign States." U.S. Const. amend. XI. "At its core, the Eleventh Amendment bars federal courts from exercising jurisdiction over suits against nonconsenting states or state entities." Kadel v. N.C. State Health Plan for Tchrs. & State Emps., 12 F.4th 422, 428 (4th Cir. 2021). But "[t]he Eleventh Amendment does not . . . prevent a state from 'choos[ing] to waive its immunity in federal court.'" Id. at 429 (some alterations in original) (quoting Sossamon v. Texas, 563 U.S. 277, 284 (2011)).

State sovereign immunity bars suit not only against a state, but also against an instrumentality of a state, such as a state agency, often referred to as an "arm of the state." See

Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); see also McCray v. Md. Transit Admin., 741 F.3d 480, 483 (4th Cir. 2014); Bland v. Roberts, 730 F.3d 368, 389-90 (4th Cir. 2013); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479 (4th Cir. 2005).

### A. Defendants are "arms of the State" of Alabama.

Plaintiff does not dispute that Defendants are "arms of the State" of Alabama. (See Pl.'s Resp. (Doc. 16) at 6-8 (confining its argument to whether Defendants have waived sovereign immunity).) This court therefore assumes, without deciding, that USA-MC and USA-CWH are "arms of the state" of Alabama.

### B. Defendants cannot waive immunity.

Plaintiff argues that Defendants waived sovereign immunity by signing the Storage Agreement. (See Pl.'s Resp. (Doc. 16) at 8.) The Storage Agreement contains a "MISCELLANEOUS" provision that provides, in part:

> This agreement shall be governed by and construed in accordance with the laws of the State of Alabama. Client agrees that any action or proceeding arising out of or related in any way to this agreement shall be brought solely in a Court of competent jurisdiction sitting in Mobile County, Alabama. Client hereby irrevocably and unconditionally consents to the jurisdiction of such court and hereby irrevocably and

-7-

> unconditionally waives any defense of an inconvenient forum to the maintenance of any action or proceeding in such court, any objection to venue with respect to any such action or proceeding and any right of jurisdiction on account of the place of residence or domicile of any party thereto.

(Storage Agreement (Doc. 1-4) at 4.) But even assuming that language constituted a waiver that was "unequivocally expressed" such that this court was "certain that the State in fact consents to suit," Kadel, 12 F.4th at 429 (cleaned up), Alabama cannot waive sovereign immunity through contract.

The Alabama Constitution provides "[t]hat the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14. "Alabama retains a 'nearly impregnable' immunity from suit and neither the state legislature nor any other state authority can waive it." Stroud v. McIntosh, 722 F.3d 1294, 1303 (11th Cir. 2013) (quoting Patterson v. Gladwin Corp., 835 So. 2d 137, 142 (Ala. 2002)) (citing Larkins v. Dep't of Mental Health & Mental Retardation, 806 So. 2d 358, 363 (Ala. 2001)). "This means not only that the state itself may not be sued, but that this cannot be indirectly accomplished by suing its officers or agents in their official capacity, when a result favorable to plaintiff would be directly to affect the financial status of the state treasury." State Docks Comm'n v. Barnes, 143 So. 581, 582 (Ala. 1932).

-8-

However, not all actions against Alabama are barred by Section 14.

> There are six general categories of actions that do not come within the prohibition of § 14: (1) actions brought to compel State officials to perform their legal duties; (2) actions brought to enjoin State officials from enforcing an unconstitutional law; (3) actions to compel State officials to perform ministerial acts; (4) actions brought against State officials under the Declaratory Judgments Act, Ala. Code 1975, § 6-6-220 et seq., seeking construction of a statute and its application in a given situation; (5) valid inverse condemnation actions brought against State officials in their representative capacity; and (6) actions for injunction or damages brought against State officials in their representative capacity and individually where it was alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law.

Ex parte Ala. Dep't of Fin., 991 So. 2d 1254, 1256-57 (Ala. 2008). "[T]hese 'exceptions' to sovereign immunity apply only to actions brought against State officials; they do not apply to actions against the State or against State agencies." Id. at 1257.

Ex parte Alabama Department of Finance is instructive. In that case, the plaintiff contracted with the Alabama Department of Finance to provide storage services. Id. at 1255. The Alabama Department of Finance, upon learning that the plaintiff's storage solution was damaged, refused to pay. Id. The plaintiff then "filed a petition for a writ of mandamus . . . seeking an

-9-

order from th[e] court requiring the Department to pay for the" storage services. Id.

The Alabama Department of Finance moved to dismiss, arguing it was entitled to sovereign immunity. Id. The trial court denied the motion, and the department filed a writ of mandamus with the Alabama Supreme Court. Id. at 1256.[3] On appeal, the plaintiff argued that an Alabama state agency was "subject to suit for the payment of goods and services it ha[d] accepted under a contract." Id. at 1256. The Alabama Supreme Court disagreed, holding that dismissal of the state agency defendant was proper because "[a]ctions against the State or against State agencies are absolutely barred by § 14." Id. at 1257. Thus, the Alabama Department of Finance could not be sued for failure to pay for storage services. See id.

Like the Alabama Department of Finance, Defendants here are immune from suit for breach of contract and Plaintiff's related claims. The parties do not dispute that Defendants are agencies of Alabama, see supra Section III.A, so the six exceptions to Section 14 do not apply. Because Defendants cannot waive

---

[3] The trial court "did not explicitly reference the motion to dismiss" when it denied the department's related motion to transfer, so on appeal the Alabama Supreme Court treated that motion as denied. Ex parte Ala. Dep't of Fin., 991 So. 2d at 1256.

-10-

sovereign immunity through contract, see Ex parte Ala. Dep't of Fin., 991 So. 2d at 1257, Defendants are immune from suit, see Kadel, 12 F.4th at 429.

Finally, this court notes that even if Alabama could waive immunity through contract, any waiver would be narrow and limited to a court as described in the waiver. "The 'test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one.'" McCants v. NCAA, 251 F. Supp. 3d 952, 958 (M.D.N.C. 2017) (quoting Coll. Sav. Bank, 527 U.S. at 675). "Generally, [a federal court] will find a waiver either if [1] the State voluntarily invokes our jurisdiction," or "[2] if the State makes a 'clear declaration' that it intends to submit itself to our jurisdiction." Coll. Sav. Bank, 527 U.S. at 675–76 (quoting Great N. Life Ins. Co. v. Read, 322 U.S. 47, 54 (1944)).

Here, Alabama has not voluntarily invoked this court's jurisdiction because it did not bring this suit or remove this suit to this court. Additionally, Alabama has not made a "clear declaration" it intends to submit itself to this court's jurisdiction. "[A] State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation." Id. at 676. Likewise, a state does not consent to suit "merely by stating its intention to sue and be sued," or

-11-

"by authorizing suits against it in any court of competent jurisdiction," Id. (cleaned up). In this case, Alabama agreed via the Storage Agreement "that any action or proceeding arising out of or related in any way to this agreement shall be brought solely in a Court of competent jurisdiction sitting in Mobile County, Alabama." (Storage Agreement (Doc. 1-4) at 4.) Alabama also "irrevocably and unconditionally consent[ed] to the jurisdiction of such court." (Id.) Nothing in the Storage Agreement's language suggests that Alabama has expressly consented to being sued in federal district court in North Carolina. At most, the language suggests Alabama has consented to suit "in a Court of competent jurisdiction sitting in Mobile County, Alabama." (Id.)

In sum, Alabama law bars waiver of sovereign immunity except through constitutional amendment, see Ex parte Ala. Department of Finance, 991 So. 2d at 1257, and even assuming Alabama could waive immunity, this court finds the Storage Agreement's language is not a waiver of immunity to suit in this

court. Therefore, this court finds Defendants' motion to dismiss should be granted.[4]

## IV. CONCLUSION

For the foregoing reasons, this court will grant Defendants' Motion to Dismiss, (Doc. 8).

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss, (Doc. 8), is **GRANTED**.

A judgment reflecting this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 25th day of April, 2022.

_____
United States District Judge

---

[4] Plaintiff argues in the alternative that in lieu of dismissal this action should be transferred to the Southern District of Alabama. (Pl.'s Resp. (Doc. 16) at 8–10.) That argument is rendered moot by this court's decision on the sovereign-immunity issue. Transferring this case to a federal district court in Alabama does not cure the sovereign-immunity issue because Defendants are similarly immune from suit in the Southern District of Alabama since Alabama cannot waive immunity through contract.